**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ROBIN K. FICKER, | * | |
| *Plaintiff*, | * | Civil Action No.: 26-CV-3583 |
| v. | * | |
| CITY OF GAITHERSBURG | * | |
| *Defendant*. | * | |

* * * * * * * * * * * * * *

**RESPONSE TO PLAINTIFF'S MOTION FOR**
**PRELIMINARY INJUNCTION**

COMES NOW, the Defendant, City of Gaithersburg ("Defendant" or "City"), by and through Erick M. Perla, Senior Assistant City Attorney, and hereby files this Response to Plaintiff's Motion for Preliminary Injunction (the "Response") and respectfully requests this Honorable Court to deny the Plaintiff's Motion for Preliminary Injunction. In support thereof, the City states as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, Robin Ficker (the "Plaintiff") is the Republican candidate for Congress in the Sixth Congressional District of Maryland, which includes the City. On or about April 28, 2026, the City became aware of a sign (the "Sign") erected on the property of Fitzgerald Auto Mall, located at 909 North Frederick Avenue, Gaithersburg, Maryland (the "Auto Mall"). *See*, Pl. Compl. ¶ 10. Plaintiff asserts he calculates that the Sign measures four (4) feet by eight (8) feet and has a surface area of thirty-two (32) square feet. *Id*. at ¶ 14. On May 11, 2026, the City issued the Auto Mall an Official Notice to Correct Violation ("Notice') notifying the Auto Mall that the Sign was not in compliance with the City Code and further directing the Auto Mall to remove the

Sign. *Id.* at ¶ 11 & Exhibit. A. The Plaintiff does not assert the Sign was removed but speculates that the Auto Mall took down the Sign after receiving the Notice, because "it was easier and less costly to comply with the order than to apply for a sign permit or a minor sign waiver." *Id.* at ¶ 25. Plaintiff further asserts, without detail, that he has apparently driven through the City "during both this year's primary election and the general election for Congress" and found no evidence of any political signs. *See*, ECF No. 3-2 at ¶ 18. There is no indication Plaintiff took any turns to further investigate, and in any event, it is clear political signs are present in the City. *See*, *Sworn Affidavit of City Code Enforcement Officer – Cody Storm*, attached hereto as **Exhibit A**, and incorporated herein.

Without verifying the facts to any greater extent, Plaintiff filed his Complaint in the above-captioned matter on September 10, 2026. After his Motion for Temporary Restraining Order and Preliminary Injunction was denied on September 14 based on lack of service, Plaintiff on October 2 filed a motion to renew after service of the Complaint was completed. While the Motion for Temporary Restraining Order was denied, the Court ordered expedited briefing on the Motion for Preliminary Injunction and set a hearing for Wednesday, October 14, 2026.

**STATEMENT OF LAW**

Injunctions and restraining orders are issued under Rule 65 of the Federal Rules of Civil Procedure. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Roswell v. Mayor*, 671 F. Supp. 3d 607, 615-16 (D. Md. 2023) (citing *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013)). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winters v. NRDC, Inc.*, 555 U.S. 7, 9 (2008). "'[M]andatory preliminary injunctions – those that alter rather than preserve the status quo – are disfavored,' and should only be granted where 'the applicants' right

to relief [is] indisputably clear.'" *Roswell*, at 616 (citing *Mt. Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 n.8 (4th Cir. 2019)).

"A party seeking… a preliminary injunction must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest." *Cmty. Cancer Ctrs. V. Azar*, 509 F. Supp. 3d 482, 493 (D. Md. 2020) (citing *Winters v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *See also*, *Roe v. United States DOD*, 947 F.3d 207, 219 (4th Cir. 2020). Where, as in this case, the government is the opposing party, the balance of equities and public interest factors merge. *See*, *Miranda v. Garland*, 34 F.4th 338, 365 (2022) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009). Further, "each *Winter* factor must be considered," such that the plaintiff "bears the burden of establishing" that all these requirements are satisfied. *Pashby v. Delia*, 709 F.3d 307, 320-21 (4th Cir. 2013). Accordingly, the plaintiff bears the burden of demonstrating that all four *Winters* factors clearly support granting a preliminary injunction. *Roswell*, at 616.

## ARGUMENT

Plaintiff is requesting this Court to grant a Preliminary Injunction due to the alleged irreparable harm that would befall his political campaign efforts in light of the imminent general election scheduled for November 3, 2026. Yet despite referring to the May 11, 2026 Notice issued regarding the Auto Mall Sign, less than a month before his victory in the primary election on June 24, 2026, Plaintiff took no action to file the Complaint and associated motions until September. Thus, despite his asserted immediate need for relief, with the November 3 election in place, Plaintiff delayed filing the Complaint and the motions for immediate relief for more than three (3) months. Further, Plaintiff made no effort, by his own admission, to make any inquiry or request directly to the City. *See*, ECF No. 3-2 at ¶ 16. The risk of immediate and irreparable harm, if any,

has been created by Plaintiff's own lack of communication and delay in not filing this action until September. This Court should deny the motion for preliminary injunction on that basis, as well as for the reasons stated hereinafter.

**A. Plaintiff is Not Likely to Succeed on the Merits**.

The Plaintiff's case focuses on allegations that the City's signage provisions regarding permitting, size limitations, and restrictions on display time are "[unreasonable] time, place, or manner restriction[s] on [his] political speech". *See*, Pl. Compl. ¶ 29, 33, and 37. By Plaintiff's own allegations, the signage provisions he attacks are content-neutral and therefore are subject to intermediate judicial scrutiny. "Content-neutral time, place, and manner regulations of speech in traditional public forums are subject to intermediate scrutiny — that is, the restrictions must be "narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication." *Reynolds v. Middleton*, 779 F.3d 222, 225-26 (4th Cir. 2015) (citing *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 555 (4th Cir. 2013)).

The Gaithersburg City Code (the "City Code") contains a comprehensive content-neutral signage ordinance within its zoning code under Chapter 24, Article 8 (the "Sign Ordinance"). The Sign Ordinance was enacted to "provide uniform sign regulations for areas under the jurisdiction of the [C]ity while respecting the rights guaranteed by the [S]tate and federal constitutions" and "to promote and protect the public health, safety, and general welfare" of City residents and visitors. *See*, City Code, § 24-8.1(A). The Sign Ordinance purposes are specified to further these interests by promoting pedestrian and vehicular safety; enhancing the unique character of the City of Gaithersburg by maintaining and complementing its aesthetic, build, and natural environment; avoiding visual clutter and ensuring compatibility with the surrounding land uses; preventing signage from becoming a public nuisance, creating blight, or posing hazards through unregulated

construction, placement, and display. *Id*. The United States Supreme Court has made clear that "municipalities have a weighty, essentially esthetic interest in proscribing intrusive and unpleasant formats of expression" that may be deemed a public nuisance. *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 806 (1984).

The Fourth Circuit has consistently allowed content-neutral restrictions on speech for this purpose, stating that "mere regulation short of a ban… does not implicate First Amendment interests" provided that alternative channels of communication are provided. *American Legion Post 7 v. City of Durham*, 239 F.3d 601, 611 (4th Cir. 2001). The City's Sign Ordinance provides ample channels of alternative communication, including those requiring no permit or fee at all. Beyond waiver processes, signs which are less than six (6) square feet in size are exempt from the permitting requirements. *See,* City Code, § 24-8.4(A)(8)(b). The only regulatory limit is the same twelve (12) square foot limit otherwise in place for temporary signs, allowing multiple signs per lot, depending on their size, all without the need for any permit. "Size limitations, so long as they are applied regardless of content, have been upheld under various circumstances as valid exercises of the legislative power." *Kolbe v. Balt. County*, 730 F. Supp. 2d 478, 480 (D. Md. 2010). Moreover, signage of a similar size can also be posted through public rights-of-way during the weekends, without any numerical limit. City Code, § 24-8.18(6). Plaintiff's ability to effectively communicate his political message, or otherwise advance his political campaign, remains unhampered so long as he abides by the reasonable content-neutral time, place, and manner restrictions established by the City Code, which are applicable to all persons, irrespective of the content contained within the signs.

Moreover, Plaintiff's assertion that the ninety (90) day limit for all temporary signs restricts his ability to post political signs is not relevant given that he filed his Complaint less than sixty

(60) days before the November 3 election. Moreover, the City does not enforce this time limit for any temporary signs, including political signs, except when they have been left standing for more than a year and/or are in disrepair, as noted in the attached affidavit from the City's code enforcement officer who issued the Notice to the Auto Mall in April. *See,* Exhibit A. This Court has found that such lack of enforcement eliminates the risk of irreparable harm. *Kolbe*, 730 F.Supp.2d at 481.

The 4th Circuit has held that "…the requirement that a statute be narrowly tailored under the *Clark* time, place, and manner test is not a least intrusive means requirement; this prong of the *Clark* test merely asks whether 'the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *American Legion Post 7 v. City of Durham*, 239 F.3d 601, 610 (4th Cir. 2001) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 798-99 (1989)) (holding that the City of Durham's general size restriction on signs and displays was narrowly tailored, as exempting certain categories of displays, such as flags, would undermine the purpose of the regulation). The Sign Ordinance's content-neutral size limitations are geared towards promoting the substantial government interests listed above, while still allowing ample options for communication and expression without any permitting requirement. If the Plaintiff's request were to be granted, this Court would essentially require the City to carve out a content-based exception that is counterintuitive to established First Amendment jurisprudence.

Plaintiff further misinterprets the City's fee schedule as it applies to temporary signage, in alleging the cost of obtaining a permit for a twelve (12) square foot temporary sign would amount to approximately Three Hundred Thirty-Five Dollars ($335.00). *See*, Pl. Compl. ¶ 18 & ECF No. 3-1 at p. 12. In fact, where a temporary sign permit is applied for prior to the sign's installment, said fee is not imposed and the resulting total fee would amount to approximately Sixty Dollars

($60.00) per sign. *See*, ECF No. 1-2 at p. 11. The City's Fee Schedule imposes a Two Hundred Fifty Dollar ($250.00) fee only when an inspection occurs "where work is proceeding without a permit." *See*, ECF No. 1-2 at p. 11 (emphasis added). Plaintiff's gross miscalculation of the applicable permit fees critically discredits his allegations that the City's signage permitting framework is not a reasonable time, place, and manner restriction.

Finally, in support of his request for a preliminary injunction, Plaintiff extensively relies on various judicial precedents that are incongruent to the factual scenario in this case. For example, while Plaintiff repeatedly refers to the decision in *Arlington County Republican Comm. v. Arlington County*, 983 F.2d 587 (4th Cir. 1993), the Fourth Circuit made clear that the conclusion reached in that particular matter was based on "the venerable principle that 'each medium of expression…must be assessed for First Amendment purposes by standards suited to it, for each may present its own problems. Thus, our analysis of the precedent cited by the [government] focuses on whether those cases specifically address restrictions on *temporary* political signs on *residential* property. *Arlington County*, 983 F.2d at 592 (emphasis in original). Plaintiff's reliance on *Arlington* is misplaced as his Complaint is focused on a matter wholly unrelated to residential property. Further, the City allows signs of less than six (6) square feet in size on all properties, including residential properties, without the need to seek any permit. Plaintiff also relies on *Curry v. Prince George's County*, 33 F. Supp. 2d 447 (D. Md. 1999) and *City of Ladue v. Gilleo*, 512 U.S. 43 (1994), both of which focused on sign regulations not allowing private homeowners to post even small signs on their residential properties. In *Curry*, this Court highlighted the significance of the home in the context of the First Amendment, noting the importance of a private homeowner's ability to display "a sign from one's own residence," and that "a yard or window

sign may have no practical substitute." *Curry*, 33 F. Supp. 2d at 453, *citing City of Ladue v. Gilleo*, 512 U.S. 43, 54-58 (1994).

As the Court stated in *Arlington County*, judicial review of a First Amendment claim must be conducted "in a manner that is particularized and suited to the underlying claim at bar." *Arlington County*, 983 F.2d at 592. Here, while Plaintiff asserts precedent focused on protecting the core right to post political signs at one's home, that is not the basis of his claim related to larger signs in commercial areas. Nor does Plaintiff assert that the City prohibits signs in residential zones. Consequently, for the reasons articulated above, including the undisputed content-neutral nature of the City Code provisions at issue and the reduced judicial scrutiny that must be applied to said provisions, the Plaintiff has failed to demonstrate that his claims have a likelihood of success.

**B. Plaintiff Will Not Suffer Irreparable Harm**

The irreparable harm Plaintiff may face based on the November 3, 2026, election is entirely based on his own two (2) to three (3) month delay in waiting to file the Complaint. When analyzing the irreparable harm requirement, a "Court also considers whether the moving party exhibited 'reasonable diligence' in seeking an injunction. *Roswell,* 671 F.Supp.3d at 618 (citing *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018)). The timing in this case varies significantly in comparison to Plaintiff's case against Talbot County, where he filed his Complaint and request for a preliminary injunction on March 25, 2021, ahead of Maryland's 2022 gubernatorial primary, which would take place over a year later in June 2022. *Ficker v. Talbot County*, 553 F. Supp. 3d 278, 281 (D. Md. 2021).

In this case, Plaintiff became aware of the City's enforcement actions related to his political signage no later than May 11, 2026 – nearly five (5) months ago. *See*, Pl. Compl. at ¶ 10. Yet, his

Complaint was not filed until September, at least three (3) months after that – and two (2) months after he won the June primary. Indeed, Plaintiff was, based on the City's records, made aware of the City's concerns with his political sign at the Auto Mall even before this, on April 28, 2026. *See*, *April 28, 2026, Email to Robin Ficker*, attached hereto as **Exhibit B**, and incorporated herein. During this time, the Plaintiff by his own admission never communicated with the City – based on what he characterizes as a lack of response by other officials more than four (4) years ago. *See*, ECF No. 3-2 at ¶ 16. Thus, Plaintiff never sought a permit; never requested a waiver from the City to erect his sign in a manner suitable to his preference as allowed under City Code, § 24-8.7; nor did he seek to post his political signage on a public right-of-way as allowed under City Code, § 24-8.18(6). Such an unexplained delay in seeking relief indicates that "speedy action is not required." *Roswell*, 671 F. Supp.3d at 618 (citing *Quince Orchard Valley Citizens Association, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989).

Plaintiff's failure to use diligence in filing, much less communicating, shows a lack of irreparable harm and undermines any argument regarding the equity and public interest *Winters* factors as well. *Roswell*, 671 F.Supp.3d at 618. The First Amendment protects Plaintiff's right to express himself politically but does not compel the City to alter or otherwise relax reasonable restrictions as a result of Plaintiff's own procrastination. As relevant to the second *Winters* factor, Plaintiff waited until less than two (2) months remained before the general election to file his Complaint with this Court, demonstrating he is not in danger of suffering irreparable harm.

As discussed above, the City's Sign Ordinance contains ample channels of communication that Plaintiff may avail himself to deliver his political message and further his political campaign. Further, even were it enforced, the ninety (90) day time limit is not relevant to this action, which was filed approximately sixty (60) days before the November 3 general election, and in any event,

it is not enforced but used instead to address dilapidated signs or those in place for more than a year. *See*, Exhibit A. This Court has found that such lack of enforcement of any specific durational limit leaves open sufficient alternatives for communicating. *Kolbe*, 730 F.Supp.2d at 481.

There is no irreparable harm that will befall the Plaintiff simply because he is unable to erect his thirty-two (32) square foot sign in the manner and on the location he would prefer. Where ample alternative modes of expression are available, a court need not invalidate regulations "because they restrict [Plaintiff's] preferred method of communication." *Roswell*, at 617 (citing *Lone Star Soc. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1202 (9th Cir. 2016).

**C. A Preliminary Injunction Would Not be Equitable or in the Public Interest.**

Granting Plaintiff's request for a Preliminary Injunction would not be equitable nor serve the public interest; as noted above, where the government is the opposing party, these factors merge and are considered together. *Miranda*, 34 F.4th at 365. Regarding the final two *Winters* factors, the balance of equities and whether the issuance of an injunction is in the public interest, the Fourth Circuit has held that they are "informed by [the Plaintiff's] likelihood of success on the merits." *Retail Energy Advancement League v. Brown*, 175 F.4th 551, 565 (4th Cir. 2026). Indeed, those factors are only established when "there is a likely First Amendment violation." *Tepeyac v. Montgomery County*, 779 F. Supp. 2d 456, 472 (D. Md. 2011). Because the Plaintiff is not likely to succeed on the merits, public interest does not weigh in the favor of granting the Preliminary Injunction.

Further, "equity ministers to the vigilant, not to those who sleep on their rights." *Roswell*, 671 F. Supp. 3d at 618 (citing, *Texaco P.R. Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 879 (1st Cir. 1995)). The two (2) month delay in Plaintiff's filing, in the face of the established November 3 general election, should indeed be "quite relevant to balancing the parties' potential

harms" in showing equity does not favor injunctions after such delay. *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989). Moreover, if this Court were to grant the Plaintiff's request, the Court would be requiring the City to regulate signs based on content, providing different rules for political signs. The City's "ability to determine and act for general welfare of its inhabitants" by enforcing municipal ordinances is ultimately what is at stake, and the City therefore urges that "the public interest counsels against an injunction." *Roswell*, 671 F.Supp.3d at 619.

WHEREFORE, the Defendant, the City of Gaithersburg, Maryland, respectfully requests this Honorable Court:

A. DENY the Plaintiff's Motion for Preliminary Injunction.

Respectfully submitted,

**The City of Gaithersburg**

Erick M Perla, Bar No. 31952
Senior Assistant City Attorney
31 S. Summit Avenue
Gaithersburg, MD 20877
(240) 805-1178
Erick.Perla@gaithersburgmd.gov
*Attorney for the City*